1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JEFFREY WAYNE ROAM,

            Petitioner,

  vs.

DAVID L. RUNNELS, Warden,

            Respondent.

)
)
)
)
)
)
)
)
)
)

No. C 03-1168 JF (PR)

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS

      Petitioner, a California prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court ordered Respondent to show cause why the petition should not be granted. Respondent filed an answer and a supporting memorandum of points and authorities addressing the merits of the petition, and Petitioner filed a traverse. Having reviewed the papers and the underlying record, the Court concludes that Petitioner is not entitled to habeas corpus relief and will deny the petition.

## PROCEDURAL BACKGROUND

      On March 31, 2000, a Santa Clara Superior Court jury convicted Petitioner of driving in willful or wanton disregard for the safety of persons or property while fleeing from a pursuing police officer, in violation of California Vehicle Code

1 § 2800.2, and found true five prior convictions and two prior prison terms.  On July 7,

2 2000, the trial court sentenced Petitioner to twenty-five years to life under the Three

3 Strikes Law, plus a consecutive two years for the two prior prison terms.

4     Petitioner appealed the judgment.  He also sought habeas corpus relief in the

5 state appellate court on June 21, 2001, while his direct appeal was still pending.  The

6 state appellate court affirmed the judgment and denied the habeas petition on

7 September 17, 2002.  Petitioner filed a petition for review from the denial of his habeas

8 petition, as well as a petition for review on direct appeal in the state supreme court,

9 both of which were denied on December 18, 2002.

10     Petitioner filed the instant federal action on March 18, 2003.

11 **FACTUAL BACKGROUND**

12     Petitioner does not dispute the following facts, which are taken from the

13 unpublished opinion of the California Court of Appeal[1]:

14       On March 12, 1997, at around 6:30 p.m., officer Richard Foster
of the San Jose Police Department was in his patrol car when he saw a
15 large U-Haul truck make a prohibited U-turn at an unsafe speed on
DeAnza Boulevard in San Jose.  FN3.  As the truck passed him in the
16 opposite direction, Foster saw [Petitioner] driving it.  Foster turned his
patrol car around and he observed [Petitioner] drive through a red
17 metering light onto Highway 85 and then into the middle lane.  Foster
got behind [Petitioner] and activated his flashing lights and his siren.
18 [Petitioner] moved over onto the shoulder, continued at 35 to 40 miles
per hour, but then sped up to around 70 miles per hour and took the
19 next exit ramp onto Saratoga Avenue.  Foster followed him.  Foster
testified that when the truck approached a red light at the intersection
20 at the end of the ramp, its brake lights came on, and the truck skidded
into the intersection, causing another driver to brake to avoid a
21 collision.  The truck continued into the intersection and hit the curb of
a median divider at 35 to 40 miles per hour.  The truck then drove over
22 the divider and headed east in the westbound lane.  At Dagmar Street,
the truck suddenly turned left. [Petitioner] abandoned it there and fled
23 on foot.  Foster was unable to catch him.  However, he was later found
and arrested near West Valley College campus.

24

25       FN3.  Foster testified that there is a no U-turn sign above the
roadway.

26 **The Defense**

27       [Petitioner] testified that he did not know that U-turns were
prohibited on DeAnza Boulevard.  He said that after he entered

28

[1] People v. Roam, No. H021748 (September 17, 2002). (Resp't Ex. C, p. 3-5.)

Highway 85, he saw Foster's flashing lights but claimed the siren was not activated. FN4. He pulled over and onto the shoulder and slowed to 35 to 40 miles per hour. However, afraid he would go to prison if caught driving without a valid license, he accelerated and took the Saratoga Avenue exit ramp. He denied driving faster than 50 to 55 miles per hour. He testified that he believed the truck had a governor that prevented it from going faster than 60 miles per hour. [Petitioner] explained that as he approached the intersection at the end of the off-ramp, he assumed the traffic light was green because he did not see any cross traffic. He intended to make a turn at the intersection but realized that he was going "a little too fast." He "jumped on the brakes," felt the truck pull, and started skidding. The truck then "bumped the curb" of the median and came to a complete stop. After a few second [sic], he drove over the median and proceed the wrong way on Saratoga Avenue at between 15 and 18 miles per hour. FN5. he turned left onto the first street.

FN4. [Petitioner] was impeached with his prior testimony that the siren was on. He explained that either he misspoke or his testimony was misreported.

FN5. [Petitioner] was impeached with former testimony that he was not going faster than 5 miles per hour.

[Petitioner] admitted that what he did was "extremely stupid." However, he said that he was in control of the truck at all times, even when it skidded; he made sure that he did not cause injury or damage property; and he looked out for other motorists before crossing the median and driving the wrong way on Saratoga Avenue.

[Petitioner] admitted having five prior felony convictions between 1983 and 1988. he admitted that after his release from prison on parole in 1996, he was rearrested and returned to prison. In 1997, he was released on parole again and within two months committed the instant offense.

Edwin Anderson, a defense investigator, made a videotape of the route [Petitioner] drove while Foster pursued him. Together with information concerning radio transmission made by Foster, the whole episode lasted a little more than one minute.

Gustava Nystrom testified as an expert in accident reconstruction and opined that, depending on certain variables, [petitioner's] truck traveled down Saratoga Avenue at 15 to 24 miles per hour. He further calculated that [Petitioner's] truck was going no faster than 19 miles per hour when it hit the curb of the median.

## LEGAL CLAIMS

Petitioner asserts the following claims for relief: (1) California Vehicle Code § 2800.2 violates due process because it requires a mandatory presumption; (2) California Vehicle Code § 2800.2 violates due process because it allows for a conviction based on driving without a license, pursuant to section 14601.5; (3) the

trial court's failure to instruct on an element of the offense -- that the three traffic violations had to involve the unsafe operation of a vehicle -- violates due process; (4) the trial court's failure to allow the jury to find whether petitioner's prior convictions qualified as serious felony convictions violated his rights under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2001); (5) the trial judge's bias against him violates due process; (6) the admission of evidence that Petitioner committed unrelated traffic violations violates due process; and (7) Petitioner received ineffective assistance of counsel because: (a) counsel made false remarks during his opening statement; (b) counsel failed to request a redaction of the prosecution's exhibit that revealed Petitioner's three prior convictions for driving under the influence; (c) counsel failed to object to evidence that Petitioner was involved in a scuffle at the time of his arrest; (d) counsel failed to request a limiting instruction that no inference was to be drawn from Petitioner's wearing jail clothing; (e) counsel failed to request a limiting instruction regarding Petitioner's prior traffic violations; (f) counsel failed to request a limiting instruction regarding Petitioner's shouting out comments at trial; and (g) counsel failed to object to Petitioner's sentence of twenty-seven years to life.

**DISCUSSION**

**A.     <u>Standard of Review</u>**

Because the instant petition was filed after April 24, 1996, it is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which imposes significant restrictions on the scope of federal habeas corpus proceedings.  Under the AEDPA, a federal court may not grant habeas relief with respect to a state court proceeding unless the state court's ruling was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the

state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409. In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The "objectively unreasonable" standard does not equate to "clear error" because "[t]hese two standards . . . are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000). The standard of review under the AEDPA is somewhat different where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim. When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable

1   application of clearly established federal law.  Richter v. Hickman, 521 F.3d 1222,

2   1229 (9th Cir. 2008).

3   **B.**   **Analysis of Legal Claims**

4       1.   Mandatory Presumption

5       Petitioner claims that California Vehicle Code § 2800.2[2] violates the Due

6   Process Clause because it contains a mandatory presumption.  (Pet., App. A, p. 8-10.)

7   Section 2800.2 provides:

8       (a) If a person flees or attempts to elude a pursuing peace officer . . .
        and the pursued vehicle is driven in a willful or wanton disregard for
9       the safety of persons or property, the person driving the vehicle, upon
        conviction, shall be punished . . .

10
        (b) For purposes of this section, a willful and wanton disregard for the
11      safety of persons or property includes, but is not limited to, driving
        while fleeing or attempting to elude a pursuing peace officer during
12      which time either three or more violations that are assigned a traffic
        violation point count under Section 12810 occur, or damage to
13      property occurs.

14   Specifically, Petitioner asserts that section 2800.2(b) created a mandatory presumption

15   because if the jury found the requisite three or more traffic violations, it was required

16   to find that Petitioner was driving in a "willful or wanton disregard."  (Pet., App. A, p.

17   9.)

18       At trial, Petitioner's theory of the case was that, in his attempt to flee from the

19   police officer, he did not drive his vehicle in a willful or wanton manner.  In fact, he

20   admitted committing several moving violations, but he maintained that he did not

21   endanger the safety of persons and property.

22       The Due Process Clause of the Fourteenth Amendment protects the accused

23   against conviction except upon proof beyond a reasonable doubt of every element of

24   the charged offense.  In re Winship, 397 U.S. 358, 364 (1970).  The threshold question

25   with respect to a presumption is whether it is mandatory.  Carella v. California, 491

26   U.S. 263, 265 (1989).  A presumption is mandatory if it "require[s] [the jurors] to find

27
_____

28       [2]  All further statutory references are to the California Vehicle Code unless otherwise
     stated.

1    the presumed fact if the State proves certain predicate facts." <u>Id.</u> (finding improper

2    mandatory presumption where jury was instructed that "intent to commit theft by

3    fraud is presumed" from failure to return rented property within twenty days of

4    demand).

5           The California Court of Appeal rejected this claim:

6           Section 2800.2, subdivision (b) does not presume; it defines.
     Although the statute uses the phrase "willful or wanton disregard for
7    the safety of persons or property" to describe an element of reckless
     evasion, the statute defines this element so that it may be satisfied by
8    proof of property damage or by proof of that the defendant committed
     three Vehicle Code violations of a certain type.  Thus section 2800.2,
9    subdivision (b) establishes a rule of substantive law rather than a
     presumption apportioning the burden of persuasion concerning
10   certain propositions or varying the duty of coming forward with
     evidence.  (See <u>People v. Dillon</u> (1983) 34 Cal.3d 441, 474-475.)  In
11   other words, evasive driving during which the defendant commits
     three or more specified traffic violations <i>is</i> a violation of section
12   2800.2 <i>because of the substantive statutory definition of the crime</i>"
     rather than because of any presumption.  (<u>Id.</u> at p. 475, original
13   italics; <u>cf.</u> <u>People v. Bransford</u> (1994) 8 Cal.4th 885 [§ 23152 defines
     substantive offense and not presumption of element of intoxication];
14   <u>Burg v. Municipal Court</u> (1983) 35 Cal.3d 257 [same re former
     § 23152]; <u>People v. Dillon</u>, <u>supra</u>, 34 Cal.3d 441 [same re felony-
15   murder rule].

16   (Resp't Ex. C, p. 8-9.)  (Emphasis in original.)

17          The state appellate court's interpretation and analysis of the state statute may

18   not be challenged in a federal habeas corpus action.  <u>Estelle v. McGuire</u>, 502 U.S. 62,

19   67-68 (1991) ("It is not the province of a federal habeas court to reexamine state-court

20   determinations on state-law questions."); <u>see also</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74,

21   76 (2005) ("We have repeatedly held that a state court's interpretation of state law,

22   including one announced on direct appeal of the challenged conviction, binds a court

23   sitting in habeas corpus.").  The Supreme Court has acknowledged that such state

24   court determinations are afforded great deference.  "If a State's courts have

25   determined that certain statutory alternatives are mere means of committing a single

26   offense . . . we simply are not at liberty to ignore that determination." <u>Schad v.</u>

27   <u>Arizona</u>, 501 U.S. 624, 636-37 (1991) (discussing Arizona's first degree murder

28   statute and stating that Arizona "has effectively decided that, under state law,

premeditation and the commission of a felony are not independent elements of the crime, but rather are mere means of satisfying a single mens rea element.").

With that in mind, the Court concludes that subdivision (b) of section 2800.2 does not create an evidentiary presumption; rather, it is a substantive definition which provides that commission of three traffic "point" violations is one method of proving a vehicle was driven with a willful or wanton disregard for the safety of persons or property.  Here, as a matter of state law, subdivision (b) is an alternative definition or description of a mens rea element, rather than a presumption.  See People v. Pinkston, 112 Cal. App. 4th 387, 392-93 (2003) (concluding that section 2800.2(b) does not state a mandatory presumption, but rather "establishes a rule of substantive law"); see also People v. Sewell, 80 Cal. App. 4th 690, 694-95 (2000) (finding that subdivision (b) "merely described a couple of nonexclusive acts that constitute driving with willful or wanton disregard").

Accordingly, the state court's decision to reject this claim was neither contrary to nor an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented.  See 28 U.S.C. § 2254(d)(1), (2).

2.    Driving without a license, in violation of section 14601.5

Petitioner claims that section 2800.2(b) violates due process because it allowed the jury to convict him if it found that he was driving without a license, in violation of section 14601.5.[3]  (Pet., App. A, p. 11-12.)  Petitioner argues that the fact that he was driving with a suspended license does not mean that he was driving with willful or wanton disregard for the safety of persons or property.  (Id.)  He asserts that driving with a suspended license is not rationally related to the crime of reckless evasion.  (Id.

---

[3]  Section 2800.2(b) states, "a willful and wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under Section 12810 occur, or damage to property occurs."  Section 14601.5, driving with a suspended license, is included in the list of convictions that qualify for a "point" under section 12810(e).

1   at 11.)

2        Substantive due process requires that laws be reasonably related "to a proper

3   legislative purpose." Nebbia v. New York, 291 U.S. 502, 537 (1934).  However,

4   "[w]hile fundamental liberty interests require that any state infringement of these

5   rights be narrowly tailored to serve a compelling state interest, state actions that

6   implicate anything less than a fundamental right require only that the government

7   demonstrate a reasonable relation to a legitimate state interest to justify the action."

8   Doe v. Tandeske, 361 F.3d 594, 597 (9th Cir. 2004) (quoting Washington v.

9   Glucksberg, 521 U.S. 702, 722 (1997)).

10       In addition, habeas relief is unavailable unless the trial error "had substantial

11  and injurious effect or influence in determining the jury's verdict." Brecht v.

12  Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation omitted).  In other words,

13  state prisoners seeking federal habeas relief may obtain plenary review of

14  constitutional claims of trial error, but are not entitled to habeas relief unless the error

15  resulted in "actual prejudice."   Id. (citation omitted)

16       The California Court of Appeal rejected this claim:

17            As the People point out, section 14601.5 proscribes more than
         driving without a proper license.  It proscribes driving with
18       knowledge that one's license has been suspended or revoked for
         refusing a chemical blood, breath, or urine test (§ 13353); refusing a
19       preliminary alcohol screening test (§ 13353.1); or having a .08 blood-
         alcohol level (§ 13353.2). [Footnote omitted.]
20
              In our view, the Legislature could reasonably consider such
21       conduct to be hazardous and that a person who knows his or her
         license has been revoked or suspended for alcohol related conduct
22       and who continues to drive without a valid license does so in
         conscious disregard for the potential impact on public safety.  As
23       such, we find that a violation of section 14601.5 is rationally related
         to and relevant to show a willful or wanton disregard for the safety of
24       persons or property.

25            Moreover, even if we accept [Petitioner's] position for
         purposes of argument, reversal would not be necessary.  In addition to
26       the violation of section 14601.5, [Petitioner] admitted three other
         specific traffic violations: he drove on the shoulder (§ 21755), over a
27       median divider (§ 21651, subd. (a)), and on the wrong side of the road
         (§ 21651, subd. (b)).  The jury had no rational basis to find that
28       [Petitioner] committed some but not all of the traffic violations that he
         admitted and that Foster observed him commit.  Thus, even if the jury

based [Petitioner's] conviction in part on driving without a valid license, doing so was harmless beyond a reasonable doubt because there were three other valid violations upon which his conviction was properly based.  (Chapman v. California (1967) 386 U.S. 18, 24.)

(Resp't Ex. C, p. 9-10.)

Even assuming that driving with a suspended license is not rationally related to the statute under which he was convicted, Petitioner cannot demonstrate prejudice.  At trial, Petitioner testified that he violated three other traffic laws: he drove on the right shoulder (RT 452-53, 493), he crossed the center median divider (RT 466-68, 497), and he drove westbound in an eastbound lane (RT 469, 498).  Because the statute only requires a finding of three or more violations, and Petitioner conceded that he committed at least three, any error was harmless.  See Brecht, 507 U.S. at 637.

Accordingly, the state court's decision to reject this claim was neither contrary to nor an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented.  See 28 U.S.C. § 2254(d)(1), (2).

3.    Failure to instruct that the three traffic violations had to involve the "unsafe" operation of a vehicle.

Petitioner claims that section 2800.2(b), read together with section 12810(e) requires that a traffic conviction counted as a point violation only if it involved the unsafe operation of a motor vehicle, and that accordingly, the jury should have been instructed with respect to such a requirement.  (Pet., App. A, p. 13-14.)  At the time of Petitioner's trial, section 12810(e) stated in relevant part that "any other traffic conviction involving the safe operation of a motor vehicle upon the highway shall be given a value of one point."[4] Petitioner asserts that because he was driving in a safe manner, had the jury been properly instructed that it had to determine the violations must have involved an unsafe operation in order to qualify under section 12810(e), it would have found him not guilty.  (Id. at 14.)

To obtain federal collateral relief for errors in the jury charge, a petitioner must

---

[4]  As of January 1, 2005, that portion of the statute can be found in section 12810(f).

1   show that the ailing instruction by itself so infected the entire trial that the resulting

2   conviction violates due process.  See Estelle, 502 U.S. at 72.  A jury instruction that

3   omits an element of an offense is constitutional error subject to "harmless error"

4   analysis.  See Neder v. United States, 527 U.S. 1, 8-11 (1999); Evanchyk v. Stewart,

5   340 F.3d 933, 940 (9th Cir. 2003).  The omission will be found harmless unless it

6   "'had substantial and injurious effect or influence in determining the jury's verdict.'"

7   California v. Roy, 519 U.S. 2, 4 (1996) (quoting Brecht v. Abrahamson, 507 U.S. 619,

8   637 (1993).

9          The California Court of Appeal rejected this claim, concluding that any error

10  was harmless.  (Resp't Ex. C, p. 11.)  The court pointed out that the traffic violations

11  "were part of a single, brief continuous course of evasive driving," and found

12  unlikely the notion that the jury might have found Petitioner "performed some of his

13  unlawful maneuvers safely and others unsafely."  (Id.)

14         Moreover, Petitioner's interpretation of the statute's requirements is

15  erroneous.  In People v. Mutuma, 144 Cal. App. 4th 635, 642 (2006), the California

16  court interpreted for the first time this "catch all" provision of section 12810 and

17  concluded that, as a matter of law, the statutory provision does not require a finding

18  as to whether the operation of a vehicle was safe or unsafe.  Id.  Rather, the

19  California state legislature intended the provision to encompass only the general

20  operation of a motor vehicle, regardless of whether the vehicle was driven safely or

21  unsafely.  Id. at 642-43 (concluding that the language of the catch-all provision does

22  not require findings regarding how safe or unsafe the driving was).

23         Accordingly, the Court rejects Petitioner's claim that the jury should have

24  been instructed that it had to find the traffic violations counted as "points" only if

25  they involved an unsafe operation of the vehicle because it is an incorrect

26  interpretation of the statute.  Id.  Petitioner was not entitled to a jury instruction on an

27  incorrect statement of the law.  Cf. United States v. Boulware, 558 F.3d 971, 974 (9th

28  Cir. 2009) (internal quotations omitted) (noting that a defendant is entitled to an

1  instruction on his defense theory only "if the theory is legally cognizable and there is

2  evidence upon which the jury could rationally find for the defendant."). As this

3  Court is required to adhere to a state court's interpretation of its own state laws, see

4  Estelle, 502 U.S. at 67-68, Petitioner's claim fails.

5      The state court's determination was not contrary to, or an unreasonable

6  application of, clearly established Supreme Court precedent, nor was it based on an

7  unreasonable determination of the facts in light of the evidence presented. 28 U.S.C.

8  § 2254(d)(1), (2).

9          4.   Apprendi error

10     Petitioner claims that he was entitled to have the jury determine whether his

11  prior convictions were serious felony convictions, thereby qualifying as strikes under

12  the Three Strikes Law. (Pet., App. A, p. 16.) Petitioner asserts the jury should have

13  made that determination pursuant to the rules set forth in Apprendi v. new Jersey, 350

14  U.S. 466 (2000).

15     "Other than the fact of a prior conviction, any fact that increases the penalty

16  for a crime beyond the prescribed statutory maximum must be submitted to a jury,

17  and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 488-90. In

18  Almendarez-Torres v. United States, 523 U.S. 224 (1998), the Supreme Court held

19  that the fact of a prior conviction is a sentencing factor which can be considered upon

20  a subsequent conviction as opposed to an element of the subsequent charged offense.

21  Petitioner urges that the facts surrounding a prior conviction fall outside the scope of

22  the Almendarez-Torres exception.

23     Although the Ninth Circuit has stated that the Almendarez-Torres exception

24  should be construed narrowly and has set guidelines that are more restrictive than

25  those in other circuits, see, e.g., Butler v. Curry, 528 F.3d 624, 643-48 (9th Cir. 2008)

26  (rejecting notion that a defendant's probationary status is within the narrow scope of

27  the "prior conviction" exception and thus, must be pleaded in the indictment and

28  proven beyond a reasonable doubt), there is no clearly established Supreme Court

precedent narrowing or clarifying the scope of <u>Almendarez-Torres</u> in the manner
argued by Petitioner.

In <u>People v. McGee</u>, 38 Cal.4th 682, 687 (2006), the California Supreme
Court did address this issue and held specifically that a court may make a
determination as to whether a prior conviction qualifies as a strike conviction without
disobeying the rules set forth in <u>Apprendi</u>.  Without explicit direction from the
Supreme Court to the contrary, the state court's decision cannot be contrary to, or an
unreasonable application of, clearly established federal law.  See <u>Kessee v.</u>
<u>Mendoza-Powers</u>, 574 F.3d 675, 678 (9th Cir. 2009) (as amended).

     5.     <u>Trial judge bias</u>

Petitioner claims that the trial judge was biased against him.  (Pet., App. A, p.
20-21.)  At trial, in support of his motion to disqualify the trial judge, Petitioner
submitted three declarations from three defense attorneys who previously had
appeared before the trial judge in unrelated cases, giving examples purportedly
demonstrating the trial judge's bias toward the prosecution.  (<u>Id.</u>)  After reviewing the
declarations, the trial judge ordered the statement of disqualification stricken, finding
that the declarations only amounted to disagreements with trial court rulings.

The Due Process Clause guarantees a criminal defendant the right to a fair and
impartial judge.  <u>See</u> <u>In re Murchison</u>, 349 U.S. 133, 136 (1955).  A claim of judicial
misconduct by a state judge in the context of federal habeas review does not simply
require that the federal court determine whether the state judge committed judicial
misconduct; rather, the question is whether the state judge's behavior "rendered the
trial so fundamentally unfair as to violate federal due process under the United States
Constitution."  <u>Duckett v. Godinez</u>, 67 F.3d 734, 740 (9th Cir. 1995) (citations
omitted).  A state judge's conduct must be significantly adverse to a defendant before
it violates constitutional requirements of due process and warrants federal
intervention.  <u>See</u> <u>Garcia v. Warden, Dannemora Correctional Facility</u>, 795 F.2d 5, 8
(2d Cir. 1986).  It is not enough that a federal court not approve of a state judge's

conduct.  Objectionable as the conduct at issue might be, when considered in the

context of the trial as a whole it may not be of sufficient gravity to warrant the

conclusion that fundamental fairness was denied.  See Duckett, 67 F.3d at 741

(citations omitted).

The California Court of Appeal rejected this claim:

> [Petitioner] bases this claim on the fact that Judge Lee struck
> his challenge for cause.  He also cites declarations filed in support of
> his challenge.  In one, a different attorney stated that in a case before
> Judge Lee, he questioned a prosecution witness and later addressed
> the jury for ten minutes before the prosecutor's closing argument.
> The attorney opined that Judge Lee took over the witness'
> examination in order to "elaborate on the prosecution's version of the
> facts" and thus make him a more effective witness.  She further
> opined that he later addressed the jury "to bootstrap his remarks to the
> Jury in closing argument."
>
> In a second declaration, [Petitioner's] attorney related that in a
> previous case, the prosecutor intended to move for dismissal against
> his client and then refile a consolidated action against him and others
> charged with the same offense.  Because his client wanted an
> immediate trial and declined to waive time, counsel informed Judge
> Lee that he had not received a proper motion to dismiss from the
> prosecution and would not waive compliance with rules requiring that
> a motion be supported by written points and authorities.  According to
> counsel, Judge Lee "ignored my objection."  Counsel then objected to
> dismissal on grounds that his client would be in custody until the
> second trial date, and therefore a dismissal would constitute "a
> flagrant attempt to vitiate my client's speedy trial rights and this was
> highly prejudicial to him."  However, Judge Lee opined that
> defendant had no basis to complain because he had previously sought
> to dismiss the case.  Over counsel's objection, Judge Lee dismissed
> the case without making a finding of good cause.  Counsel
> reemphasized the lack of points and authorities, but Judge Lee
> "indicated that he did not have time for such considerations."
>
> In our view, the allegations concerning Judge Lee's conduct in
> unrelated cases have little, if any, probative value concerning whether
> [Petitioner] was denied his right to an impartial judge in this case.
> First, the declarations do not raise a strong inference that Judge Lee is
> biased or appeared to rule in accordance with such a bias.  Moreover,
> even if they did, such an inference does not necessarily establish that
> subsequent trials, over which he may preside, are necessarily flawed.
>
> Viewing the declarations and Judge Lee's ruling on the
> challenge for cause in light of the record of the entire proceedings
> below, we conclude that [Petitioner] has failed to convincingly
> demonstrate that Judge Lee was biased in favor of the prosecution or
> otherwise conducted himself in a way that deprived, or even
> threatened to deprive, [Petitioner] of a fair trial before an impartial
> judge.  Simply put, the factual basis for [Petitioner's] claim does not
> reasonably imply that Judge Lee might not have been capable of

1    being impartial or that his trial was unfair.

2    (Resp't Ex. C, p. 14-15.)

3         Here, Petitioner proffers insufficient factual support for his claim of judicial

4    bias in his particular case.  Judicial rulings alone almost never constitute a valid basis

5    for a bias or partiality motion.  See Liteky v. United States, 510 U.S. 540, 555 (1994).

6    "[O]pinions formed by the judge on the basis of facts introduced or events occurring

7    in the course of the current proceedings . . . do not constitute a basis for a bias or

8    partiality motion unless they display a deep-seated favoritism or antagonism that

9    would make fair judgment impossible."  Id.  Petitioner has pointed to nothing in the

10   record suggesting that the trial judge displayed a "deep-seated favoritism or

11   antagonism that would make fair judgment impossible."  Id.  Rather, Petitioner's

12   statements in support of this claim amount to nothing more than "judicial rulings,

13   routine trial administration efforts, and ordinary admonishments"  Id. at 556.

14        Accordingly, the state court's determination was not contrary to, or an

15   unreasonable application of, clearly established Supreme Court precedent, nor was it

16   based on an unreasonable determination of the facts in light of the evidence presented.

17   28 U.S.C. § 2254(d)(1), (2).

18        6.    Erroneous admission of evidence

19        Petitioner claims that the trial court erroneously permitted evidence of

20   Petitioner's traffic violations which he committed prior to attempting to flee the police

21   officer.  (Pet., App. A, p. 21.)  Petitioner asserts that the admission of the evidence

22   after he offered to stipulate that there was probable cause to detain him violated

23   California law.[5]  (Id.)  Construed liberally, Petitioner also argues that admission of this

24   "other acts" evidence violated his right to due process.  (Id. at 22.)

25        The due process inquiry in federal habeas review is whether the admission of

26   evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.

27

28        [5] Petitioner's claim of a state law violation is not a proper basis for federal habeas relief.
     Estelle, 502 U.S. at 67-68.

See Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995).  But only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process.  See Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).

The California Court of Appeal rejected this claim under California Evidence Code §§ 1108 and 352.  It concluded that evidence of violations just prior to Officer Foster's attempt to stop Petitioner were "relevant to prove that Foster was acting within the course and scope of his duties as a peace officer. . ."  (Resp't Ex. C, p. 16.)  The California Court of Appeal also determined that, in general, the prosecution cannot be compelled to accept a stipulation, and even if the admission was erroneous, there was no harm.  (Id.)

Here, even if the admission of the prior traffic violations was irrelevant or prejudicial, the Ninth Circuit recently stressed that the Supreme Court has "not yet made a clear ruling that the admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient" to grant habeas relief.  Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009).  Because there is no "clearly established" federal law regarding this issue, the state court's ruling cannot have been an "unreasonable application."  Id. (Internal quotation and citation omitted.)

Accordingly, the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

### 7.    Ineffective assistance of counsel

Petitioner raises seven claims of ineffective assistance of counsel.  A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial

1    cannot be relied upon as having produced a just result.  Id.

2         In order to prevail on a Sixth Amendment ineffectiveness of counsel claim,

3    petitioner must establish two things.  First, he must establish that counsel's

4    performance was deficient, i.e., that it fell below an "objective standard of

5    reasonableness" under prevailing professional norms.  Id. at 687-88.  Second, he must

6    establish that he was prejudiced by counsel's deficient performance, i.e., that "there is

7    a reasonable probability that, but for counsel's unprofessional errors, the result of the

8    proceeding would have been different."  Id. at 694.  A reasonable probability is a

9    probability sufficient to undermine confidence in the outcome.  Id.

10                    a.    False remarks during opening statement

11        Petitioner asserts that he and his trial counsel became embroiled in an actual

12   conflict of interest resulting in Petitioner receiving ineffective assistance of counsel.

13   (Pet., App. A, p. 17-18.)  Specifically, Petitioner argues that counsel made false

14   statements during his opening argument that Petitioner lost control of his vehicle and

15   that Petitioner ran a red light.  (Id. at 17.)  Petitioner argues that the false statements

16   resulted in a credibility contest between Petitioner and counsel.  (Id. at 18.)

17        The relevant portion of defense counsel's opening statement is as follows:

18            The testimony will be conflicting as to, perhaps, how fast
         [Petitioner] went, but there will be some evidence that he may have
19        gotten up to 70 miles an hour traveling down the shoulder of the road,
         and then he comes -- again, I believe the evidence will show within --
20        in a half-mile, so from -- he goes from 40 to perhaps 70.  Maybe not
         70, but in the half of mile between that sign and the exit.  When he
21        gets to the exit the testimony will be fairly clear that he steps on the
         brake going down the offramp, slows down.  Remember, he's driving
22        a one-ton U-Haul truck, and you'll see pictures of that truck or similar
         trucks.

23            And when he gets to the bottom of the ramp he hadn't - he
24        finds that he has lost some control of the vehicle so that it -- it may
         have gone through the red light, but we believe the evidence will
25        show that even though he went through that red light -- and that's
         another stupid thing that Mr. Roam did, the question that you have to
26        determine is in going through that red light did he endanger anyone.
         Now, that doesn't mean he could have endangered anyone --

27            THE [PETITIONER]: Objection, Your Honor.  I didn't admit
28        going through a red light.

THE COURT: Again, we talked a little bit about the role. It is your attorney's role to make objections. You may wish to confer with him, but at this point I would continue to hear from him. And you may conclude your opening statements, Mr. Orvis.

MR. ORVIS: In any case, whether the light was red or was not red. He applies his brakes and goes through the intersection, and I was starting to say that the question is not whether the light was red, I mean, that's not the important issue, it may have been red, it may not have been red, but the question is if it was red and if he went through the intersection whether he endangered a particular person or persons that was in that intersection, and we believe the evidence will show that it did not.

(Resp't Ex. H1, RT 186-87.)

The California Court of Appeal rejected this claim:

The record here does not reveal the reasons for counsel's remarks. As noted, [Petitioner] testified that he was not used to driving such a big truck and that as he got to the bottom of the offramp and started his turn, he was going too fast and felt the truck pull. He hit the brakes, and the truck began to skid. As a result, he could not complete the turn without hitting the median. [Petitioner's] admission that he drove in a way that caused the truck to skid and hit the median undermines his assertion that he was driving safely and in complete control of the truck at all times. In anticipation of [Petitioner's] testimony, counsel could reasonably find it appropriate [to] characterize the skidding as some loss of control. We further note that in his closing statement, counsel emphasized that [Petitioner] "testified he was not out of control, and I don't know that a skid by itself says that he was out of control. I mean clearly he was trying to make a turn. He was having trouble making the turn, but was he out of control? He says he came to stop at the median. Is that out of control? I mean, that's your call. I don't think it was necessarily. I don't think the evidence establishes beyond a reasonable doubt that he was out of control."

Next, we note that Foster testified that the light at the intersection was red. [Petitioner], however, merely *assumed* it was green and admitted he did not know whether it was red or green. Counsel did not concede that [Petitioner] went through a red light but only that he may have done so. He then asserted that whether the light was red was irrelevant. Later, during closing argument, counsel reiterated this point, noting that neither side could prove the color of the light at the time and that [Petitioner] assumed it was green and did not endanger anyone.

Under the circumstances, we do not find that counsel's comments beyond reasonable explanation. FN6. Moreover, given the overwhelming evidence of guilt, we would not find a reasonable probability that the jury would have reached a more favorable verdict had the comments not been made. (Strickland v. Washington, 466 U.S. at pp. 687-688.)

FN6. We reject [Petitioner's] claim that counsel's comments

1

2

3

4

> created an actual and irreconcilable conflict of interest between them, and that the trial court's failure to take appropriate action denied him due process of law and compels reversal. [Petitioner's] reliance on People v. Coleman (1992) 9 Cal. App. 4th 493 does not convince us otherwise.  Simply put, given the whole record, we do not find that counsel's comments undermined [Petitioner's] credibility or compelled a mistrial.

5    (Resp't Ex. C, p. 6-7.)

6         Here, despite Petitioner's disagreement with his counsel's characterization of

7    certain facts, counsel's statements were reasonable in order to focus the jury on the

8    disputed issue of whether Petitioner was driving safely.  Cf. United States v. Swanson,

9    943 F.2d 1070, 1075-76 (9th Cir. 1991) ("in some cases a trial attorney may find it

10   advantageous to his client's interests to concede certain elements of an offense or his

11   guilt of one of several charges").

12        Further, Petitioner cannot demonstrate prejudice.  Where the defendant is

13   challenging his conviction, the appropriate question is "'whether there is a reasonable

14   probability that, absent the errors, the factfinder would have had a reasonable doubt

15   respecting guilt.'"  Luna v. Cambra, 306 F.3d 954, 961 (9th Cir. 2002) (quoting

16   Strickland, 466 U.S. at 695).  Reviewing counsel's opening statement as a whole and

17   in conjunction with Petitioner's testimony, the Court concludes that counsel's

18   statements were not false.  In fact, counsel's statement that Petitioner "lost some

19   control" was reconcilable with Petitioner's testimony that he skidded and hit the

20   median, which undermines Petitioner's claim that he maintained control of the truck at

21   all times.  In addition, counsel's statement regarding the color of the traffic light was

22   not directly contrary to Petitioner's testimony that he "assumed" the light was green

23   when he drove through it.

24        Because the opening statement was consistent with testimony from Petitioner

25   and Foster, Petitioner cannot show that the result of trial would have been different.

26   Moreover, even assuming error, the "false" statements were not relevant to

27   Petitioner's theory of defense, and did not affect the jury's determination of guilt.

28   See, e.g., Plascencia v. Alameda, 467 F.3d 1190, 1201 (9th Cir. 2006) (ineffective

1    assistance of counsel claim not established because "any prejudicial effect was at best

2    minute" from counsel's failure to object to evidence about existence of a drug in

3    murder defendant's system where only killer's identity was in dispute).

4        Accordingly, the state court's determination was not contrary to, or an

5    unreasonable application of, clearly established Supreme Court precedent, nor was it

6    based on an unreasonable determination of the facts in light of the evidence presented.

7    28 U.S.C. § 2254(d)(1), (2).

8                  b.   <u>Failure to request redaction of exhibit</u>

9        Petitioner claims that counsel was ineffective for failing to request the

10   redaction of the People's Exhibit 14E, which indicated that Petitioner had suffered

11   three prior convictions for driving under the influence ("DUI").  (Pet., App. B, p. 11.)

12   Without specification, Petitioner asserts that the DUI convictions prejudiced the jury.

13   (<u>Id.</u>)

14        At trial, the prosecution introduced People's Exhibit 14, sections A through E,

15   to demonstrate Petitioner's prior conviction for robbery in Nevada.  (RT 355-360.)

16   Included in that packet of documents were the pertinent judgment for the conviction

17   of robbery, an information charging robbery, Petitioner's photograph, Petitioner's

18   fingerprint card, and a judgment for a the conviction of a third offense of DUI.

19   (Resp't Ex. I12, p. 22-41.)  The record demonstrates that Petitioner's counsel objected

20   to the admission of portions of the packet that referenced Petitioner's prior DUI

21   convictions.  (RT 355-67.)  During the discussion of the admissibility of Exhibit 14,

22   Petitioner's counsel mainly contested whether the fingerprints and photograph were

23   properly certified for inclusion with the prior robbery conviction.  (<u>Id.</u> at 359, 362,

24   366.)  Over objection, the trial court determined that the circumstances surrounding

25   the preparation of the documents in Exhibit 14 indicated its trustworthiness, and

26   admitted the packet in its entirety.  (<u>Id.</u> at 366.)

27        The California courts denied this claim without comment.

28        Without deciding whether counsel was deficient, <u>see</u> <u>Williams v. Calderon</u>, 52

1    F.3d 1465, 1470 & n.3 (9th Cir. 1995), the Court concludes that Petitioner has not

2    demonstrated that there is a reasonable probability that had counsel requested

3    redaction of Exhibit 14, the result of trial would have been different.  See Strickland,

4    466 U.S. at 694.  Here, the inclusion of the DUI convictions had no bearing on the

5    disputed issue of whether Petitioner was driving his vehicle in a willful or wanton

6    manner.  In addition, Petitioner admitted at trial that he suffered five prior convictions

7    for burglary and robbery (RT 485-86), and admitted at least three of the requisite

8    traffic violations (RT 452-53, 466-68, 469).  Further, the jury was instructed that it

9    was not permitted to consider allegations of prior convictions as evidence or proof that

10   Petitioner committed the underlying charged crime.  (CT 213, RT 540.)  Because

11   "juries are presumed to follow their instructions," Zafiro v. United States, 506 U.S.

12   534, 540-41 (1993) (internal quotation omitted), Petitioner cannot show that he was

13   prejudiced by the failure to redact or sanitize Exhibit 14.

14       Accordingly, the state court's determination was not contrary to, or an

15   unreasonable application of, clearly established Supreme Court precedent, nor was it

16   based on an unreasonable determination of the facts in light of the evidence presented.

17   28 U.S.C. § 2254(d)(1),(2).

18                     c.      Failure to object to evidence of scuffle

19       Petitioner claims that counsel was ineffective in failing to object to Officer

20   Foster's testimony that Petitioner was eventually apprehended by West Valley College

21   campus security.  (Pet., App. B, p. 12.)  At trial, Foster testified, "they had a guy that

22   they had chased through the creek, I guess, and I don't know if they had gotten in a

23   fight with him or a scuffle or something."  (RT 186.)  Petitioner asserts that this

24   testimony was irrelevant, inadmissible, and subject to exclusion under California

25   Evidence Code § 352.  (Pet., App. B, p. 12-13.)

26       The California courts denied this claim without comment.

27       Again, without deciding whether counsel was deficient, see Williams, 52 F.3d

28   at 1470 & n.3, the Court concludes that Petitioner has not demonstrated that there is a

reasonable probability that had counsel objected to Foster's testimony, the result of trial would have been different.  See Strickland, 466 U.S. at 694.  The testimony was relevant only to show how police apprehended Petitioner, and was tangential to the disputed issues at trial.  Any prejudice from failing to object to testimony that Petitioner may have been in a scuffle with campus security after the evasion is minimal at best.  See Plascencia, 467 F.3d at 1201.

Accordingly, the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

          d.     Failure to request limiting instruction regarding jail clothing

Petitioner claims that counsel was ineffective for failing to request a limiting instruction directing the jury not to consider his clothing when deliberating Petitioner's guilt.  (Pet. App. B, p. 8-10.)

The California courts denied this claim without comment.

Here, during closing argument, defense counsel pleaded to the jury that it not consider the fact that Petitioner was dressed in jail clothing during trial.  "Mr. Roam you see is dressed in jail clothes.  The fact that he's in jail clothes means I guess he's in jail, but, again, that is not to be taken as consideration of you in establishing his guilt or innocence."  (RT 597.)

Generally, the decision not to seek a limiting instruction is "solidly within the acceptable range of strategic tactics employed by trial lawyers" so as to not draw unnecessary attention to the potentially damaging evidence.  See Musladin v. Lamarque, 555 F.3d 830, 845-46 (9th Cir. 2009) (quoting United States v. Gregory, 74 F.3d 819, 823 (7th Cir. 1996)).  Further, in light of counsel's inclusion in his closing argument regarding the jury's prohibition of considering Petitioner's clothing, Petitioner fails to demonstrate how he could have been prejudiced by the failure to request a limiting instruction.  See Strickland, 466 U.S. at 694.

1
2
3
4

Accordingly, the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

5
6

e.      Failure to request limiting instruction regarding prior traffic violations

7
8
9

Petitioner claims that counsel was ineffective in failing to request a limiting instruction telling the jury that the traffic violations he committed prior to the actual act of attempting to flee from the police officer should be considered only as it pertained to the officer's probable cause to detain him.  (Pet., App. B, p. 13-14.)

10

The California courts denied this claim without comment.

11
12
13
14
15
16
17
18
19

As discussed in Section B.6, supra, the admission of such violations did not violate due process.  Further, counsel's decision not to request such an instruction is within the range of tactical decisions by trial lawyers.  See Musladin, 555 F.3d at 845-46.  In addition, the California Court of Appeal noted, "during closing argument, the prosecutor made clear that the offenses that occurred before Foster activated his lights did not constitute part of the [Petitioner's] evasive conduct.  Moreover, the prosecutor did not suggest that these offenses showed a disposition to commit the charged offense."  (Resp't Ex. C, p. 16.)  As such, Petitioner was not prejudiced by the failure to request such a limiting instruction.  See Strickland, 466 U.S. at 694.

20
21
22
23
24

Accordingly, the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

25

f.      Failure to request limiting instruction regarding outbursts

26
27
28

Petitioner claims that counsel was ineffective in failing to request a limiting instruction directing the jury to disregard Petitioner's many outbursts during trial. (Pet., App. B, p. 15-16.)  During trial, rather than speak through his attorney, Petitioner made several audible comments and objections in front of the jury.  (RT

133, 186, 268, 324.)

In closing argument, Petitioner's trial counsel stated:

> Something unique about this case, please, please don't hold against Jeff Roam some of the things that you've seen here in the courtroom. I think he feels badly about some of those things. In particularly he asked me to apologize for the little anecdote that he told yesterday about shooting . . .
> MS. LOHMAN: Objection, Your Honor. This is improper argument relaying the [Petitioner's] comments.
> THE COURT: The objection is sustained.
> MR. ORVIS: But in any case his conduct in court generally is not to be taken as any evidence of his guilt.

(RT 597.)

The California courts denied this claim without comment.

Not only does Petitioner fail to show counsel's performance was deficient for failing to request a limiting instruction, see Musladin, 555 F.3d at 845-46, but in light of counsel's inclusion in closing argument regarding the jury's prohibition of considering Petitioner's outbursts, Petitioner cannot demonstrate prejudice from such failure. See Strickland, 466 U.S. at 694.

Accordingly, the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

g.    Failure to object to sentence of twenty-seven years to life

Petitioner claims that counsel was ineffective in failing to argue that his sentence of twenty-seven years to life violated the Eighth Amendment's prohibition against cruel and unusual punishment. (Pet., App. B, p. 17-20.)

A criminal sentence that is not proportionate to the crime for which the defendant was convicted violates the Eighth Amendment. Solem v. Helm, 463 U.S. 277, 303 (1983). But "outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." Id. at 289-90. Eighth Amendment jurisprudence "gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle - the

precise contours of which are unclear." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 76 (2003) (internal quotations and citations omitted).  "The Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." <u>Ewing v. California</u>, 538 U.S. 11, 23 (2003) (quoting <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1001 (1991) (Kennedy, J ., concurring)).

In <u>Harmelin</u>, 501 U.S. at 995, 961, the Supreme Court upheld a mandatory life sentence without the possibility of parole for an offender who had been convicted of a sole drug offense of possessing 672 grams of cocaine, and who had no prior felony convictions.  In contrast, Petitioner was sentenced to twenty-seven years to life for felony evasion after the jury found he had suffered three "strike" felonies and two prior prison terms.  In comparison to the petitioner in <u>Harmelin</u>, Petitioner has not established that his sentence was grossly disproportionate to his crimes.  <u>Id.</u>

In <u>Lockyer</u>, 538 U.S. at 72, the Supreme Court stated that the gross disproportionality standard is applicable to sentences for a term of years.  In that case, the offender's third strike resulted from two convictions for petty theft, and the state court sentenced him to two consecutive terms of twenty-five years to life sentences under the state's recidivist law.  <u>Id.</u> at 66.  The Supreme Court noted that the offender had a criminal history including misdemeanor theft, residential burglary, transportation of marijuana, petty theft, and escape.  <u>Id.</u> at 66-67.  The Supreme Court affirmed the offender's sentence and concluded that "the governing legal principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle -- the precise contours of which are unclear."  <u>Id.</u> at 76 (internal quotations omitted).

Here, Petitioner's criminal history included five prior serious felony convictions for robbery and burglary, as well as two prison priors.  Because Petitioner has not made the threshold showing that the crime committed and the sentence imposed are grossly disproportionate, counsel could not have provided deficient

performance for failing to object to his sentence, nor could Petitioner have been prejudiced from such failure. <u>See Strickland</u>, 466 U.S. at 694; <u>see also United States v. Gibson</u>, 690 F.2d 697, 703-04 (9th Cir. 1982) (failure to make objections does not render assistance ineffective unless challenged errors can be shown to have prejudiced the defense).

Accordingly, the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

       7.   <u>Additional claims</u>

       a.   <u>Respondent's Memorandum is in excess of twenty-five pages</u>

In his traverse, Petitioner raises for the first time a claim that Respondent's Memorandum of Points and Authorities is "time-barred" and improperly filed. (Traverse, p. 18.)  Specifically, Petitioner states that Respondents failed to request permission to file an answer in excess of twenty-five pages.  A review of the docket reveals that, contrary to Petitioner's assertion, on March 25, 2005, Respondent did file a motion for leave to file excess pages, and that on March 30, 2005, the Court granted that motion.  Accordingly, Petitioner's claim that Respondent's Memorandum of Points and Authorities is improper is inaccurate.

       b.   <u>Failure to give unanimity instruction and cumulative error</u>

Petitioner also raises for the first time in his traverse claims that: (1) the trial court erred in failing sua sponte to give CALJIC 17.01, a unanimity instruction (Traverse, p. 4), and (2) the cumulative prejudice of counsel's errors resulted in ineffective assistance of counsel (Traverse, p. 7).  Because Petitioner failed to raise these claims in the first instance in his petition, the Court declines to address them. <u>See Cacoperdo v. Demosthenes</u>, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief.")

1

**CONCLUSION**

2      For the reasons set forth above, the Court concludes that Petitioner has failed to

3  show any violation of his federal constitutional rights in the underlying state criminal

4  proceedings.  Accordingly, the petition for writ of habeas corpus is DENIED.

5      The Clerk shall terminate all pending motions, enter judgment and close the file.

6      IT IS SO ORDERED.

7  DATED: _____9/28/09_____      _____

8                                            JEREMY FOGEL
                                             United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28